RUSCYK *v.* DETROIT UNITED RAILWAY.

1. AMENDMENT—ADJOURNMENT—CONTINUANCE—SURPRISE.

On the trial of a personal injury action in which the plaintiff amended his declaration so as to charge defendant's motorman with subsequent negligence and failure to take necessary precautions to avoid a collision with the car on the rear bumpers of which plaintiff was riding, the court should not have permitted the amendment without granting a continuance which defendant's attorney asked for on the ground of surprise.

2. STREET RAILWAYS—PERSONAL INJURIES—NEGLIGENCE.

*Held,* also, that the evidence did not sustain plaintiff's claim that defendant's motorman was chargeable with actionable negligence notwithstanding plaintiff's precedent contributory negligence, that defendant's motorman took every possible precaution to avoid the collision after he discovered plaintiff's peril and a verdict for the defendant should have been directed.

KUHN and BIRD, JJ., dissenting.

Error to Wayne; Van Zile, J. Submitted November 6, 1913. (Docket No. 83.) Decided June 1, 1914.

Case by Bernard Ruscyk, by his next friend, against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Corliss, Leete & Moody (William G. Fitzpatrick,* of counsel), for appellant.

*Dohany & Dohany,* for appellee.

McALVAY, C. J. A judgment was recovered by plaintiff against defendant for damages in a negligence case for personal injuries. Plaintiff, a young man about 17 years old, received his injury at about half past 6 o'clock on the morning of April 19, 1911,

while riding on the rear bumper, or deadhead, outside of the rear dash of a north-bound Baker-Chene street car of defendant in the city of Detroit, while such car was on the passing switch near the corner of Garfield and Chene streets.

At this time defendant operated a single track line on Chene street from Gratiot avenue to the northeasterly city limits, upon which cars moved north and south, passing each other on switches located at distances of from 800 to 900 feet apart. The service ordinance then in force called for a three-minute service, upon which cars from the barn on Baker street were operated. From the Chene street intersection on this track it was not possible to operate cars exactly on schedule. The cars from that point were run north and south substantially upon a double header system by which two cars going north would ordinarily pass two cars going south on the same switch.

On the morning in question it had rained considerably before the accident occurred. The track was wet, and the weather foggy. This was during what is called the "rush hour," and all the cars were crowded. Plaintiff lived several blocks north of this switch. He was acquainted with the conditions of traffic at this time of day, and walked south on Chene street as far as Forest, where, discovering a car on or near the switch at Garfield street, one block further on, he proceeded south. Arriving at this place he found the car crowded inside and on the platform. The second car, bound in the same direction, also came on this switch and stopped near the rear of the first car. Plaintiff says he undertook to get on this second car, and, not being able to do so, because of the crowd, went back to the first car, and, with others, climbed on the rear bumpers of the rear dash, where he stood when the conductor took his fare. The testimony indicates that the cars stood from 6 to 15 feet

apart. These cars waited on this switch until two south-bound cars passed them. The first car then started forward and, after moving a short distance, suddenly stopped.

To this point there is no dispute between these parties upon the facts. It is claimed on the part of plaintiff, and testimony is in the record on his part tending to show, that the motorman on the rear car, who was in a position to see plaintiff riding on the bumper of the first, slowly started his car forward, and did not stop it until the collision occurred and plaintiff was injured.

It is not disputed on the part of defendant but that the motorman operating the rear car saw the persons who were riding on the bumper. Defendant's claim relative to the collision, tending to support which there is evidence in the record, is as follows: The motorman on the second car testified that, observing the first car had started, he gave the signal that he was ready, and, receiving the answer from his conductor, started his car ahead on one point of the controller, afterwards increasing it to two. He says he very soon observed that the car ahead had stopped, and at once shut off his power, tripped his sand, put on his air brakes, and hand brakes, but, owing to the wet and slippery condition of the track, was unable to stop his car before it struck the bumper of the first car a slight blow, without injury to either car. There is no dispute between the parties as to the following facts: Some of the men standing on this bumper jumped before the cars collided. Plaintiff's left foot was caught between the bumpers of the cars and badly crushed, and another boy was injured slightly. These bumpers are five inches wide, extending out this distance around the end of the car. Plaintiff distinctly saw the car approaching slowly from the rear, and testified he thought it was going to stop. He had fre-

quently used the cars on this line before this day in going to and from his work. He appears, from his testimony, to be a young man of ordinary intelligence, and had attended a Polish school, also an English school into the fifth grade, and could read and write both languages.

Experienced motormen operated both of these cars on this date. The first car started out after the two south-bound cars had passed on this switch. It had gone but a short distance before the motorman discovered another south-bound car approaching about one block south of the next switch. He had not discovered it sooner because of the fog. To avoid being forced to back south if he passed the frog on this Garfield switch going north, and thereby lose his place and also time, he stopped his car at once.

Cars, of necessity, on this line, because many of the switches will accommodate but two cars, must keep quite near together. The motorman of the rear car could not see, as he testifies, the car going south, and, having started slowly, when he discovered the sudden stopping of the first car, immediately made the efforts to stop his car, the controlling mechanism of which was in perfect condition.

At the close of plaintiff's case, and after a motion made by defendant for a directed verdict, because there was no proof of the acts of negligence charged in the first count of the declaration, because of a fatal variance between the allegations of negligence contained in the second count of the declaration and the proofs in the case, because there was no evidence of negligence proved as charged in such count, and because plaintiff was guilty of contributory negligence, the court, upon motion of plaintiff's attorney, granted leave to amend the second count of the declaration. This was done, notwithstanding the objection of defendant that such amendment charged a new cause of action, on account of which defendant was not pre-

pared to proceed because of complete surprise. The amended count reads as follows:

"That he boarded a certain car of the defendant which was facing in a northerly direction, and which was standing on the easterly side of the switch at said point, and paid his fare to the conductor in charge of said car; that said car was greatly overcrowded; plaintiff took a position outside of the rear dash of the same, in which position plaintiff and several other passengers were standing when the conductor of said car accepted his fare; that after plaintiff boarded said car said car was moved forward on said switch a distance of 4 or 5 feet, at which point it stopped and remained stationary for a period of three or four minutes; while said car was so standing at said point on said switch, the defendant, by its servants in charge of another car standing about 11 feet in the rear of said car upon which plaintiff was a passenger, caused said rear car to be started forward and to be operated to and against the plaintiff who was standing on the bumper;   *   *   *   that the motorman in charge of said car in the rear of the car saw plaintiff and several other passengers in their position outside of the rear dash of said car before causing said rear car to be started forward, and well knew that if he collided with the rear of said car upon which plaintiff was riding, that plaintiff would be crushed and crippled, that notwithstanding the fact that plaintiff occupied said position outside of the rear dash of said car and was in plain view of, and had been seen by defendant's motorman before starting his car forward, the said motorman in charge of said rear car, in utter disregard of his duty in the premises, and with reckless, thoughtless, and intentional disregard of the consequences, acting with gross, wanton, and wilful negligence, caused said car which he was operating to be propelled forward to and against the plaintiff and other passengers who were outside of the rear dash of said car, and without the exercise of any proper effort to avoid said collision."

Defendant was required to proceed at once with the trial upon such declaration as amended, to which its counsel objected and excepted. This declaration

upon which the case was submitted to the jury was the third which had been filed in the case.

The original declaration, filed August 15, 1911, contained but one count, and alleged that, while plaintiff was a passenger on the rear platform of a crowded car of defendant company which had arrived on the switch at Garfield street, another car going in the same direction at a high rate of speed collided with it, badly crushing and injuring him, charging defendant's duty was to operate its cars not less than a certain distance apart and at a certain speed, which duties were alleged to have been violated.

In October, 1912, upon leave given, plaintiff filed an amended declaration containing two counts. The first count alleged that he boarded one of defendant's cars at Garfield and Chene streets to go to his work, and paid his fare; it charges in proper language defendant's duty to operate its cars without negligence, and as required by certain ordinances, and at a certain distance apart when approaching from the rear, and at a certain rate of speed; it charges a negligent disregard of such duties in operating a car at a high rate of speed approaching the car upon which plaintiff was a passenger from the rear, so that it collided with it, and he was severely injured, without fault or negligence on his part. The position which plaintiff occupied upon the car is not stated in this count.

The second count alleged that plaintiff at this place, at the invitation of defendant, boarded a greatly overcrowded car while it was standing on Garfield switch; that he "took a position outside of the rear dash of the same" where several others were standing, and paid the conductor his fare; that the car remained stationary for three or four minutes, and, while so standing on the switch, another car of defendant, approaching from the rear of the car upon which plaintiff was a passenger, in plain sight of the approach-

ing car, where he could be seen for several blocks by its motorman, was operated with gross, wanton, and wilful negligence at a high rate of speed, causing it to collide with the car upon which he was a passenger and injured him severely.

Under the direction of the court, the trial of the case proceeded after the court had denied defendant's motion for a directed verdict, and had allowed an amendment to plaintiff's declaration, notwithstanding an objection by defendant that such amendment stated a new cause of action and was a matter of surprise. The case was tried and submitted upon this declaration amended at the close of plaintiff's case. The result of the trial was a verdict in favor of plaintiff. Defendant has brought the case to this court for review by writ of error.

The errors assigned and relied upon by defendant for a reversal, which are based upon the refusal of the court to grant its motion for a directed verdict at the close of plaintiff's case, do not require consideration. It is admitted in plaintiff's brief that the first count of the declaration was eliminated from the case during the trial. The abandonment of the second count immediately after this motion was made, by asking from the court and accepting permission to amend the second count of plaintiff's declaration and filing the amended count, was an admission on the part of plaintiff that the contention of defendant that there was a fatal variance between the declaration as it then stood and the proofs of plaintiff in the case was well founded.

The contention of defendant that the record disclosed plaintiff was guilty of contributory negligence does not appear to be disputed. This is admitted by the amendment to plaintiff's declaration, which relies entirely for a recovery upon the alleged subsequent negligence of defendant, upon which, if shown, a recovery could be had, notwithstanding plaintiff's con-

tributory negligence. This was the view of the case taken by the court, as appears from what was said at the time the amendment was made, and later in submitting the case to the jury upon the one question of subsequent negligence.

It is strongly urged on the part of defendant that the court erred in allowing plaintiff to amend his declaration at that time. Under the circumstances, we do not think it necessary to consider the proposition. If it be admitted that allowing such amendment was a matter of discretion on the part of the court, the question remains whether requiring defendant to proceed to trial at once was an abuse of judicial discretion, when its counsel was protesting that this amended declaration stated another and different charge of negligence, whereby defendant, by reason of surprise, was not prepared to proceed to trial.

The court, later in the case, where a similar question arose relative to another amendment to the declaration to allow proof of a certain custom, not so important as the one under consideration, recognized the fact that, if by an amendment a great surprise is given to the opposite party, sufficient time for preparation should be granted, and so ruled. We do not think, under the circumstances of this case, this court should say that, where defendant had been called to meet a certain specific charge of negligence alleged in the declaration, and had prepared to defend such a case, it should be required forthwith to proceed to defend a substantially different charge of negligence, without opportunity to procure witnesses or make other preparation for defense.

At the close of the case counsel for defendant made a motion for a directed verdict, "upon the ground that there is no proof of the allegations of negligence contained in the plaintiff's declaration and that, under the law, the plaintiff is guilty of contributory negligence." Counsel challenged the sufficiency of the

amended declaration, as not charging a case of subsequent negligence, and said:

"If it does state a case for liability for subsequent negligence, I assert that there is no evidence which supports the allegation of subsequent negligence, as charged in the declaration."

The motion was denied, the court saying:

"I think negligence arises from the fact that the motorman saw it who was operating the car. I think that is sufficient negligence. * * * I think, in other words, you may go to the jury in this case upon the question of subsequent negligence."

Errors are assigned upon the ruling of the court denying this last motion, and also upon the holding of the court that subsequent negligence arose from the fact that the motorman operated the car in such a way that it collided with the car upon which plaintiff was riding, with the knowledge of the fact that plaintiff was in an exposed and dangerous position.

The case was submitted to the jury upon the one question of subsequent negligence upon the theory of the court as above stated. The declaration contains no specific averment of negligence in starting the rear car in the manner it was started, nor as to the speed at which it was operated. There is no dispute in the record but that the car started and proceeded slowly, nor is there any dispute but that the motorman did everything possible to stop the car and avoid collision. Plaintiff testified that it was coming slowly, and that he expected it would stop before striking his car.

To hold the defendant liable for subsequent negligence under this declaration it must appear that after the rear car was started the motorman, with knowledge of the situation, made no reasonable effort to stop it and avoid collision. In other words, that the conduct of the motorman amounted to gross negligence. The evidence in the record does not support such a conclusion.

Other errors assigned do not require consideration.

For the reasons stated, the judgment of the circuit court is reversed, and a new trial granted.

BROOKE, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred with McALVAY, C. J.

KUHN, J. *(dissenting).* I am of the opinion that the judgment should be affirmed, as the question of the defendant's subsequent negligence, under the facts in this case, was a question of fact, and was properly submitted to the jury.

BIRD, J., concurred with KUHN, J.